IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

GARY F. MATHERS,

        Petitioner,

v.                           Case No. 6:07-cv-00734

EVELYN SEIFERT, Administrator,
Northern Correctional Center,

        Respondent.

PROPOSED FINDINGS AND RECOMMENDATION

On November 16, 2007, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, with exhibits (docket sheet document # 3). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On November 21, 2007, the undersigned ordered that Respondent file an answer or other response to the petition, solely on the issue of timeliness, by December 28, 2007. (# 6). On December 28, 2007, Respondent filed a Response to Petition for Writ of Habeas Corpus (# 10), a Motion to Dismiss, with accompanying exhibits (# 7), and a Memorandum of Law in support thereof (# 8). Respondent's motion asserts that Petitioner's section 2254 petition is untimely under 28 U.S.C. § 2244(d)(1).

On January 22, 2008, Petitioner filed a "Response and Objection to Respondent's Motion to Dismiss" (hereinafter "Petitioner's Response") (# 11).  Respondent did not file any further briefing.  The matter is now ripe for determination.

## PROCEDURAL HISTORY

On January 26, 1994, Petitioner was indicted by a Wood County grand jury on five counts of Incest (Counts 1, 3, 5, 7 and 9), and five counts of Sexual Assault in the Third Degree (Counts 2, 4, 6, 8 and 10) (Case No. 94-F-31).  (# 7, Ex. 1).  Following a jury trial that took place from June 6-10, 1994, Petitioner was found guilty of four counts of Incest (Counts 3, 5, 7 and 9), and four counts of Sexual Abuse in the Third Degree (Counts 4, 6, 8 and 10).  He was found not guilty on Count 1 (Incest) and Count 2 (Sexual Assault in the Third Degree).  (Id., Ex. 2).  Petitioner was represented by attorney William E. Kiger during his criminal proceedings.  It is unclear whether Mr. Kiger, who is now deceased, was court-appointed or retained; however, there is no reflection in the docket sheet concerning appointment of counsel, so it would appear that Mr. Kiger was retained counsel.

By Order entered July 29, 1994, the Circuit Court of Wood County sentenced Petitioner to consecutive sentences of five to ten years in state prison on each conviction for Incest, and one to five years on each conviction of Sexual Assault in the Third Degree, with 50 days of credit for time served.  (Id., Ex. 3).

2

Petitioner's motion for probation was denied.  (<u>Id.</u>)

Petitioner, by counsel, filed a Petition for Appeal of his conviction and sentence to the Supreme Court of Appeals of West Virginia (the "SCAWV") on December 5, 1994.  (<u>Id.</u>, Ex. 4).  The SCAWV refused the Petition for Appeal on January 25, 1995.  (<u>Id.</u>)

On June 22, 2001, Petitioner filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Wood County, which, as discussed below, was after the expiration of the one-year statute of limitations under 28 U.S.C. § 2244(d)(1).  (<u>Id.</u>, Ex. 5).[1]

Petitioner filed the instant section 2254 petition on November 16, 2007.  (# 3).

## <u>ANALYSIS</u>

On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  The AEDPA provides, in part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the

---

[1]  Additional petitions for appeal and petitions for habeas corpus relief were filed after this date, which will be detailed <u>infra</u>.

Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Section 2244(d)(2) further provides:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

<u>Petitioner's petition is untimely under 28 U.S.C § 2244(d)(1)</u>

Petitioner's conviction became final on April 25, 1995[2], prior to the enactment of the AEDPA. The United States Court of Appeals for the Fourth Circuit has held that, "in the case of a habeas challenge to a state conviction that became final prior to the enactment of the AEDPA, a habeas petitioner is entitled to a one-year grace period from the effective date of the Act, April 24, 1996, in which to file a federal habeas petition." <u>Crawley v. Catoe</u>, 257 F.3d 395, 398 (4th Cir. 2001) (citing <u>Brown v. Angelone</u>, 150 F.3d 370, 375 (4th Cir. 1988)). Thus, Petitioner had until

_____

[2] This was the last date on which Petitioner could have filed a Petition for a Writ of Certiorari in the Supreme Court of the United States. Petitioner did not file such a petition. <u>See</u> <u>Harris v. Hutchinson</u>, 209 F.3d 325, 328 (4th Cir. 2000).

April 24, 1997 to file a section 2254 petition, unless Petitioner had properly filed an application for state post-conviction or other collateral review, which would toll the statute during the pendency of those proceedings.   28 U.S.C. § 2244(d)(2).

As of April 24, 1997, no "properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim", was pending which could have tolled the one-year statute of limitations under section 2244(d)(2), as Petitioner did not file his first state habeas corpus petition until June 22, 2001.   Furthermore, Petitioner did not file the instant section 2254 petition until November 16, 2007.

<u>Equitable tolling of statute of limitations</u>

Petitioner's Response indicates that he was not aware of the one-year limitation for filing his federal habeas petition, and that he was relying upon counsel to assist him in filing a habeas corpus petition.   He further asserts that his counsel was ineffective.   (# 11 at 3-4).

The undersigned construes Petitioner's contention as a request for equitable tolling of the statute of limitations.   The United States Court of Appeals for the Fourth Circuit has held that the limitation period set forth in 28 U.S.C. § 2244(d) is subject to equitable tolling.   <u>See</u> <u>Harris v. Hutchinson</u>, 209 F.3d 325, 329-330

(4th Cir. 2000).[3]

As to when equitable tolling should apply, the Fourth Circuit has stated:

> We believe, therefore, that any resort to equity must be reserved for those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Id. at 330.  The Court opined that equitable tolling should apply in "two generally distinct kinds of situations:" (1) where a plaintiff/petitioner is prevented from asserting his claim by some kind of wrongful conduct on the part of the defendant/respondent; and (2) where extraordinary circumstances beyond the plaintiff/petitioner's control made it impossible to file the claims on time.  Id.

Petitioner has not alleged any wrongful conduct on the part of the State that contributed to the delay in filing his habeas corpus petition.  Rather, Petitioner asserts that the failure of his former counsel to file a habeas corpus petition in the state court, which would have tolled the AEDPA statute of limitations, is the conduct that resulted in the untimely filing of his section 2254 petition.  Thus, the question for this court is whether the conduct

_____

[3]  The Supreme Court has not specifically ruled on whether section 2244(d) allows for equitable tolling.  However, in Lawrence v. Florida, 127 S. Ct. 1079, 1085 (Feb. 20, 2007), the Court assumed that equitable tolling was available under that statute, based upon the agreement of the parties, but found that it was not warranted under the circumstances of that particular case.

of Petitioner's former counsel was beyond Petitioner's control and sufficiently extraordinary to make a strict application of the AEDPA statute of limitations inequitable.

Specifically, Petitioner's Response states in pertinent part:

The petitioner would argue that it was out of his control why his petition was not filed.

Petitioner's attorney had his law license suspended Jan. 16, 1995. (Exhibit 1). This in fact leave the petitioner stranded and helpless to file any motions because he is illiterate to the law.

Substitute counsel failed to get state habeas in on time, and made no effort to file a Federal Habeas, being an inturn [sic; intern] fresh out of law school.

Counsel's failure to answer any of petitioner's letters in reference to filing habeas corpus's. Until petitioner wrote Judge Hill, and requested action. (exhibits 2)(exhibit 3).

If the petitioner would have been informed of such time limits and/or if the Circuit Court would have responded to the petitioner's numberous [sic; numerous] request[s] then the time frame would have been met.

* * *

In the instant case the respondent [sic; petitioner] was left helpless by the attorney's [sic attorney] who was appointed to protect his rights. It would be a grave injustice if this court grants the defendants motion to dismiss.

(# 11 at 1-2, 5). Petitioner has provided documentation of his communications with Mr. Kiger and his staff concerning the filing of his state court habeas corpus petition. (Id., Exs. 1-3). There is no mention in any of the correspondence of a federal habeas corpus petition or the deadline for filing such a petition.

As noted in the Procedural History above, Petitioner's direct appeal, <u>State v. Mathers</u>, No. 942273, was refused on January 25, 1995.  On January 24, 1995, the day before the opinion was issued by the SCAWV, Mr. Kiger wrote Petitioner a letter which stated:

> Dear Gary:
>
> This letter will be a follow-up to my letter of December 9, 1994, in which I told you that my License to practice law in this State was going to be suspended for a period of six (6) months.  The suspension began on January 16, 1995, and I am required to inform you in writing of that fact.
>
> I appreciate you signing and returning to me the AGREEMENT CONCERNING THE SUBSTITUTION OF COUNSEL in order that one of the other Attorneys here at my office could assume your representation.  I have notified the Clerk of the West Virginia Supreme Court of Appeals that Attorney Jan Dils Hughes will now be representing you.  Obviously, I will be available to assist Ms. Hughes and to make certain that she has a thorough understanding of your case.
>
> Enclosed you will find a copy of a PRO SE MOTION FOR LEAVE TO WITHDRAW AS COUNSEL that I have filed in the Supreme Court of Appeals.  I am required to file this MOTION due to my suspension.
>
> If you have any questions or need further information please feel free to contact either me or Ms. Hughes here at the office at any time.
>
> Very truly yours,
> William E. Kiger

(# 11, Ex. 1).  According to documents attached to Petitioner's section 2254 petition, Ms. Hughes filed an Amended Petition for Appeal on February 23, 1995, which was also refused on an unspecified date.  (# 3, Attach. 8 at 2).  The undersigned's staff has been unable to determine the date the Amended Petition was

refused.

Petitioner has also provided a letter he received from Mr. Kiger, dated March 7, 1996, a month and a half before the enactment of the AEDPA, in which Mr. Kiger advised Petitioner about the timing and circumstances for filing a motion for reduction of sentence under Rule 35 of the West Virginia Rules of Criminal Procedure.  Mr. Kiger advised Petitioner that his case did not fall into any of those circumstances.  (# 11, Ex. 2 at 1-2).  On page 2 of the letter, however, Mr. Kiger stated:

> At the present time you do have the right to file a Post-Conviction Petition For A Writ of Habeas Corpus pursuant to *West Virginia Code*, 53-4A-1, et seq.  The filing of such a Petition is, therefore, your next step in attempting to get out from under the sentence imposed upon you by Judge Hill.  I am enclosing a copy of an opinion of the West Virginia Supreme Court of Appeals issued in the case of *Losh v. McKenzie* and I would like for you to read this case carefully as it explains the procedure followed when such a Petition is filed.  Also, please give your close attention to Page 611 of the Opinion where you will find a "laundry list" of the possible grounds that may be raised in such a Petition. As you will see, one of the possible grounds is for "excessive sentence" and that, in my opinion, certainly applies in your case.

> My intention all along has been to prepare and file on your behalf a Post-Conviction Petition For A Writ of Habeas Corpus raising all possible grounds for post-conviction relief, including the excessive sentence that you received.  As I am sure you recall, when the Supreme Court of Appeals denied your Petition for Appeal two of the Justices, Cleckley and Neely, wanted to grant the Petition for the limited purpose of reviewing the sentence that was imposed upon you.

* * *

9

> I am not doing any Court-appointed work and have not been on the "appointment list" for quite a few years. Are your parents still able and willing to pay the attorney fees and expenses that would be required in filing a Petition? Perhaps you should discuss that with them and then have them get in touch with me.
>
> No matter what happens, I have not forgotten about your situation and do want to do what I can to help. In the meantime, please feel free to contact me at any time.

(Id. at 2). Based upon this letter, it would appear that Mr. Kiger

was intending to represent Petitioner in state habeas proceedings,

if they could agree upon a fee arrangement.

The next correspondence provided by Petitioner is a letter

dated October 28, 1997 (which was six months after the expiration

of the one-year statute of limitations for filing a section 2254

petition), from Denny M. Kiger, a Legal Assistant in Mr. Kiger's

office. That letter states:

> Dear Gary:
>
> First of all, I apologize that you have not received any correspondence from this office in quite some time. We have, however, not forgotten about you. I have personally been following all of the Supreme Court Opinions which might be applicable to your situation and researching them carefully in an attempt to come up with some new and inventive way to present a Petition to Judge Hill. Our Paralegal, Kristina Spader has been reviewing your file thoroughly for quite some time now in an effort to determine any and all issues we might raise in the Petition.
>
> I appreciate the letters you have sent to us at the office as well as the Certificates for the programs you have completed during your incarceration. If there are additional programs or courses you have completed or are currently enrolled in, please write and let us know what they are.

As far as your question concerning whether or not your case could be transferred to Marshall County, I do not believe that is possible.  In a criminal case, all proceedings held in regard to that case must remain in the Court in which the conviction was handed down regardless of where the individual is currently incarcerated.

We do plan to file a Petition in your case before the end of the year.  As I stated earlier, we have spent quite a bit of time researching legal issues and following recent Opinions in an effort to come up with something new to present in the Petition.

Again, I apologize that no one has written to you sooner; we were simply hoping to have something concrete to report before we contacted you.  Do not give up hope; we will continue our efforts on your behalf and hope to see some positive results before too much longer.

Please feel free to call the office collect at any time if you have questions or need to share any information with us.

(# 11, Ex. 2 at 3).

The next correspondence Petitioner has provided is a letter dated December 29, 1998, from Mr. Kiger to Petitioner, which states:

Dear Gary:

I appreciate you staying in contact with the office and letting us know how things are going for you.  We have reached the point in your case where further legal research, and waiting for the Supreme Court of Appeals to issue an Opinion concerning excessive sentences, is not doing any good.  Therefore, your Post-Conviction Petition For Habeas Corpus will be completed on or before January 15 and will be sent to you for you to review and sign.  Between now and then if you have any comments or suggestions concerning what matters we should address in the Petition please let me know.

Thank you for your patience.

11

(Id. at 4).

The next correspondence Petitioner has provided is a letter from Mr. Kiger, dated September 17, 1999, which states:

Dear Gary:

Thank you for your letter of September 15, 1999, which I received yesterday.  I have carefully reviewed the Opinion of the West Virginia Supreme Court of Appeals in *State ex rel Strogen v. Trent*, 196 W. Va. 148, 469 S.E.2d 7 (1996), and a copy of the Opinion is enclosed for your review.

I am not able to determine how the *Strogen* Opinion is pertinent to your case.  The issue in the *Strogen* case appears to have been a claim of Ineffective Assistance of Counsel as a result of a Court-appointed Attorney to adequately investigate the circumstances surrounding the Petitioner's confession.  The Court noted that the Petitioner's Court-appointed Attorney did not have enough information available, due to his failure to make an appropriate investigation, to make an informed decision concerning the validity of the confession.

The admissibility of the confession that you made when you were interviewed by Lt. R.L. Woodyard of the Wood County Sheriff's Department on or about October 26, 1993, was thoroughly litigated in your case.  Enclosed you will find copies of Pages 134 through 165 of the Transcript from your trial.  As you will see, during the *in camera* hearing Lt. Woodyard thoroughly reviewed what occurred when he met with you at the Wood County Judicial Building and the circumstances surrounding his interview of you and the confession you made.  It is my recollection that you and I agreed that Judge Hill would determine that your confession was admissible and, as a strategic move, we decided that you and Sue would testify concerning the circumstances under which the interview occurred in the presence of the Jury during your trial rather than during the *in camera* hearing.

We have been attempting to schedule a date and time for a hearing upon the PETITION FOR A WRIT OF HABEAS CORPUS AD SUBJUCIENDUM.  Denny has called Judge Hill's Office at least once a day all week without getting an answer.  I am hoping to have the hearing scheduled

sometime in mid-November and as soon as we are able to confirm a date and time I will let you know.

(Id. at 5).  It is unclear from this correspondence whether a petition had been filed at that time; however, the court records provided by the parties would indicate that a petition had not been filed.

The next correspondence Petitioner has provided is a letter dated November 15, 1999, which states:

Dear Gary:

    The hearing on your Petition For a Writ of Habeas Corpus *Ad Subjiciendum*.  I am simply not yet ready to proceed to a hearing and, in addition, we have not yet been able to have Witness Subpoenas served on two potential witnesses.  Hopefully, the hearing will be rescheduled before Christmas.

    As you know, the Statute concerning post-conviction Petitions For Habeas Corpus provide that you are entitled to one Omnibus hearing at which all grounds for relief must be raised.  Therefore, I do not want to proceed to a hearing until I am ready to do so.

(Id. at 7).  Again, it is not clear from this correspondence whether Mr. Kiger had filed a habeas corpus petition in the state court at that time.  The correspondence contains an incomplete case number (99-P-____).

On January 31, 2000, Mr. Kiger wrote another letter to Petitioner, which states in pertinent part:

    Thank you for your letter of January 26, 2000, which I received in the mail last Friday.  I am still not very optimistic about your chances of having your sentences reduced if we proceed to file the PETITION FOR A WRIT OF HABEAS CORPUS *AD SUBJICIENDUM* that I have prepared.  As you are aware, that PETITION would automatically be

13

assigned to Wood County Circuit Judge George W. Hill and
I seriously doubt that he would be inclined to reduce the
sentences that he imposed.

As you mentioned in your letter, this is an election
year and Judge Hill is going to have some opposition at
the polls. * * * Please discuss this matter with your
wife and let me know whether you want me to proceed to
file the PETITION or wait and see what happens on
election day.

(Id. at 8).  Thus, it is apparent from this correspondence that Mr.
Kiger had not filed a habeas corpus petition on Petitioner's behalf
as of that date.

The final correspondence that Petitioner has provided to the
court is a letter dated June 1, 2001, from Judge George W. Hill to
Mr. Kiger enclosing a letter from Petitioner (which is not included
in the documents provided to this court), and asking Mr. Kiger to
"look into this matter."  (# 11, Ex. 3).  It would appear that Mr.
Kiger then filed a habeas corpus petition in the Circuit Court of
Wood County on June 22, 2001.

It is clear that ignorance of the law, or the lack of
appointment of counsel are not "extraordinary circumstances"
sufficient to equitably toll the statute of limitations.  See,
e.g., United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004)(pro
se status and ignorance of the law does not justify equitable
tolling; Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th
Cir. 1991)(refusing to apply equitable tolling where the delay in
filing was the result of a plaintiff's unfamiliarity with the legal
process or his lack of legal representation); United States v.

14

Flores, 981 F.2d 231, 236 (5th Cir. 1993)(pro se status, illiteracy, deafness, and lack of legal training are not external factors sufficient to excuse or extend limitations period); Fisher, supra, 174 F.3d at 714 ("ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing").

Furthermore, the Supreme Court of the United States has made it clear that "the principles of equitable tolling . . . do not extend to . . . garden variety claims of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). In Rouse v. Lee, the Fourth Circuit recognized that, in general, "a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." 339 F.3d 238, 248 (4th Cir. 2003)(citing Harris, supra, 209 F.3d at 331). Accordingly, the Fourth Circuit affirmed the district court's denial of equitable tolling of the AEDPA statute of limitations after Rouse's counsel missed the statutory deadline by one day.

In Rouse, the court held that "the actions of Rouse's attorneys are attributable to Rouse and, thus, do not present 'circumstances external to the party's own conduct.'" Id. at 249. The court further stated:

> Former counsel's errors are attributable to Rouse not
> because he participated in, ratified, or condoned their

15

> decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency (citations omitted).

Id. The court further based its decision upon the fact that there is no right to counsel in a federal habeas proceeding, and "in the absence of constitutional ineffective assistance of counsel, attorney error is attributable to the petitioner."  Id. at 250 (citations omitted).  Based upon these rulings, it would appear that equitable tolling is not appropriate in the instant case.

Recently, however, in Goedeke v. McBride, 437 F. Supp. 590 (S.D. W. Va. 2006), the Honorable Joseph R. Goodwin, the presiding District Judge in this matter, found that an absolute failure to represent a habeas petitioner over the course of six years, while repeatedly informing the petitioner that a petition was being prepared, goes beyond simple attorney negligence, and constitutes circumstances that would support the equitable tolling of the AEDPA statute of limitations.  The facts in Goedeke are similar to those in the instant case.

In Goedeke, the petitioner (hereinafter "Goedeke"), acting pro se, filed a partially completed habeas corpus petition in the Circuit Court of Raleigh County, West Virginia.  The petition did not list any grounds for relief.  Goedeke requested that counsel be appointed to assist him in preparing a proper petition.  437 F. Supp. at 591.  Attorney Robert File was appointed to represent Goedeke on May 4, 1995, prior to the enactment of the AEDPA statute

16

of limitations.  Id. at 592.  Mr. File assigned the case to an associate in his firm, C. Michael Griffith.  Id.  The following discussion is taken from the Goedeke opinion:

> Between August 1995 and June 1996, Mr. Griffith met with Mr. Goedeke approximately once per month.  During this period, Mr. Griffith began suffering major health problems -- he was diagnosed with hypothyroidism and had to undergo chemotherapy treatments for Hodgkin's disease. After a June 14, 1996 meeting, Mr. Griffith stopped visiting Mr. Goedeke. * * *
>
> In December 1996, Mr. Goedeke learned that Mr. Griffith had left the File firm but that the firm would retain his case.  On May 28, 1997 [after the expiration of the AEDPA statute of limitations], Mr. File wrote Mr. Goedeke to inform him that Mr. Griffith, even though he had left the firm, would continue to represent him "because he has already spent so much time on the matter."  The letter explains that Mr. File and Mr. Griffith discussed the matter within the preceding week after receipt of a May 9, 1997 letter from Mr. Goedeke inquiring about the status of his case.  Presumably, Mr. File and Mr. Griffith did not determine who would take Mr. Goedeke's case until receiving Mr. Goedeke's May 9 letter, which occurred at least five months after Mr. Griffith's departure from the firm.

Id. at 592-593.

Although Mr. Griffith resumed his monthly meetings with Goedeke in June 1997, those meetings ceased again in September 1997, and Goedeke did not hear from Mr. Griffith again, despite Goedeke's attempts to contact him, for over five months.  On May 18, 1998, Goedeke filed the first of two complaints against Mr. Griffith with the West Virginia State Bar's Office of Disciplinary Counsel.  Id. at 593.  The complaint prompted Mr. Griffith to visit Goedeke on July 2, 1998, and Goedeke subsequently withdrew

17

his ethics complaint against Mr. Griffith.   Id.

On October 5, 1998, Mr. Griffith told Goedeke that he had "begun to gather cases in support of our claims on your various petitions" and that he would meet with him during the next month. Id.  However, Mr. Griffith did not communicate with Goedeke again until March 9, 1999.  Again, Mr. Griffith made excuses for having not filed Goedeke's habeas petition.  Mr. Griffith's letter to Goedeke indicated that he would visit Goedeke in April to review cases and discuss the petition.   Id.

On April 22, 2000, over a year after receiving Mr. Griffith's last letter, Goedeke wrote a letter to Mr. Griffith inquiring as to the status of his petition, and stating that he would have to find new counsel, if Mr. Griffith did not respond to him by May 19, 2000.  Goedeke repeatedly wrote to Mr. Griffith and received no response until, on February 13, 2001, Mr. Griffith filed a motion to withdraw as counsel.  The Circuit Court of Raleigh County ultimately found that the appointment of counsel had been premature, and allowed Mr. Griffith to withdraw.  Id. at 594.

On April 2, 2001, Goedeke filed his second ethics complaint against Mr. Griffith with the Office of Disciplinary Counsel.  The Goedeke opinion further states:

> In this complaint, [Goedeke] explains that on multiple occasions he asked Mr. Griffith whether a deadline existed for filing a federal habeas petition, and each time Mr. Griffith told him that no deadline existed. Mr. Griffith's lack of knowledge concerning any federal habeas deadline also is apparent from an April 9,

2001 letter to Mr. Goedeke and a May 9, 2001 response to the ethics committee when he states he researched the issue yet found no deadlines.  The Lawyer Disciplinary Council [sic; Counsel] investigated Mr. Griffith's conduct and voted to admonish him because of his lack of diligence in pursuing Mr. Goedeke's petition.

On July 2, 2001, Mr. Goedeke filed his state habeas petition, which was dismissed on January 30, 2002.  The West Virginia Supreme Court of Appeals denied his petition for appeal on October 21, 2004.  Mr. Goedeke filed the pending federal petition on July 2, 2005.

Id. at 594-595.

In finding that Goedeke was entitled to equitable tolling of

the AEDPA statute of limitations, Judge Goodwin found:

Mr. Griffith's representation, or lack thereof, cannot be characterized as simple attorney negligence.  He failed to represent his client over the course of six years despite constantly telling his client otherwise.  I FIND his claims that he arduously was working on Mr. Goedeke's petition throughout the six-year period incredible.  The State introduced no evidence to show that Mr. Griffith actually worked on Mr. Goedeke's case other than write Mr. Goedeke short letters that said progress was being made.  Based on the evidence in the record, I FIND Mr. Griffith completed no substantive work on Mr. Goedeke's case.  Though Mr. Griffith "represented" Mr. Goedeke for more than six years, Mr. Goedeke would have been in the same position had he never had an attorney.

Had Mr. Griffith completely abandoned Mr. Goedeke or told him that he would not work on his petition, Mr. Goedeke could have acquired another attorney or filed a petition on his own.  Mr. Griffith, however, consistently coerced Mr. Goedeke into believing that his petition was almost ready.  Mr. Goedeke had no reason to disbelieve Mr. Griffith's constant assurances.

I FIND the situation created by Mr. Griffith's false assurances is more severe than the situation created by an attorney who completely abandons his client from day one.  Mr. Griffith's conduct misled Mr. Goedeke for more than six years and undermined faith in the judicial system.  Finding otherwise would cause indigent

19

defendants to question the veracity of court-appointed counsel at every stage of every proceeding.  I FIND that Mr. Griffith's repeated assurances constitute, at best, extreme exaggerations and most likely false representations.  Based on the evidence of Mr. Griffith's serious misconduct, I FIND the facts of this case present the rare situation where equitable tolling is warranted.  See United States v. Martin, 408 F.3d 1089, 1093-94 (8th Cir. 2005)(finding an attorney's consistent assurances that he would file a petition grounds for equitable tolling); Spitsyn v. Moore, 345 F.3d 796, 780 (9th Cir. 2003)("Though ordinary attorney negligence will not justify equitable tolling, we have acknowledged that where an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable tolling"); Baldayaque v. United States, 338 F.3d 145, 152-53 (2d Cir. 2003)(finding attorney conduct that is sufficiently egregious to justify equitable tolling).

Id. at 598.

Similarly, Mr. Kiger's repeated reassurances that he was working on Petitioner's habeas corpus petition, when in fact no petition was prepared and filed until June 22, 2001, constitutes sufficiently egregious conduct to justify the equitable tolling of the AEDPA statute of limitations until the filing of Petitioner's state habeas petition.  As noted in McLaughlin v. Lee, 2000 WL 34336152 *3 (E.D.N.C., Oct. 19, 2000)(unpublished), "the petitioner's attorneys placed him 'in the extraordinary situation of believing that he had counsel when, in fact, he had counsel in name only.'"

If this court were to equitably toll the statute of limitations under 28 U.S.C. § 2244(d)(1) until Petitioner's first state court habeas corpus petition was filed, it would appear that

20

Petitioner's section 2254 petition would be timely.  A review of the docket sheet of Petitioner's state court criminal case indicates that Petitioner's habeas corpus petition, filed in the Circuit Court of Wood County on June 22, 2001, was denied on June 26, 2001.  (# 7, Ex. 5 at 2, ln. 56).  It further appears that Petitioner then filed either a petition for appeal from the denial of that habeas corpus petition, or an original jurisdiction habeas corpus petition in the SCAWV[4], and that the SCAWV subsequently issued a rule to show cause and returned the case to the Circuit Court of Wood County for an omnibus hearing.  (Id. at 2, ln. 61).

Attorney Patrick N. Radcliff was subsequently appointed to represent Petitioner in his Circuit Court habeas proceeding.  An amended petition was filed on May 22, 2002, and the proceedings continued, with a second amended petition being filed on January 5, 2005.  (Id. at 2-3; # 3, Attach. 1).  The second amended petition was denied by a specially-appointed judge, the Honorable David Nibert, on February 14, 2006.  (Id. at 3, ln. 95; # 3, Attach. 7).  On September 5, 2006, Mr. Radcliff filed a Motion to File a Petition for Appeal Out of Time.  (# 3, Attach. 8, Ex. 2; # 7 at

---

[4]  The Circuit Court docket sheet for Petitioner's criminal case contains a 10/31/01 entry listing a letter from the SCAWV requesting the original file for appeal, and stating that a copy of a petition for appeal was filed (# 7, Ex. 5 at 2, ln. 58); however, both the Order Denying Petitioner's Second Amended Wood County Habeas Corpus Petition (# 3, Attach. 7 at 2) and the Petition for Appeal from the denial of that petition refer to this filing as a pro se Petition for Habeas Corpus filed in the SCAWV on October 10, 2001.  (# 3, Attach. 8 at 4).

3).  That motion was refused by the SCAWV on September 21, 2006.  (Mathers v. Seifert, No. 062397).  (# 3, Attach. 8, Ex. 1 at 3 and Ex. 2; # 7, Ex. 5 at 3, ln. 102).

Because the time period for filing a petition for a writ of certiorari in the Supreme Court of the United States following the denial of a state court habeas corpus petition is not included in the tolling period, see Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001); Lawrence v. Florida, 127 S. Ct. 1079, 1085 (2007), Petitioner's one-year period for filing a section 2254 petition began to run on September 22, 2006 and ran for 318 days, until Petitioner filed an original jurisdiction habeas petition in the SCAWV on August 6, 2007.  That petition was refused on October 11, 2007 (Mathers v. Seifert, No. 072518).  (# 3, Attach. 8, Ex. 1 at 2).  Thus, the statute of limitations was tolled during that time period.  The statute of limitations began to run again on October 12, 2007.  When Petitioner filed the instant section 2254 petition on November 16, 2007, there were still 12 days left under the statute of limitations.

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (# 3) is untimely under 28 U.S.C. § 2244(d)(1).  However, the undersigned further proposes that the presiding District Judge **FIND** that there are extraordinary circumstances that warrant the equitable tolling

22

of the statute of limitations, and that Petitioner's federal petition is timely in light of the equitable tolling.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Respondent's Motion to Dismiss Petition as Untimely Filed (# 7) and again refer this matter to the undersigned for additional proceedings and to submit a proposed ruling on the merits of Petitioner's habeas corpus petition.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn,

474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party, Chief Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

| | |
|---|---|
|    April 30, 2008    | *Mary E. Stanley* |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |